IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2018

**JAMES CARROLL v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Maury County**
**Nos. 23899, 23969   Robert L. Jones, Judge**

_____

**No. M2017-01075-CCA-R3-PC**

_____

The Petitioner, James Carroll, filed a petition seeking post-conviction relief from his convictions of aggravated assault and driving under the influence (DUI), second offense and effective four-year, six-month sentence.  In the petition, the Petitioner alleged that (1) the State violated his due process rights by failing to collect and preserve evidence pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), and that (2) his trial counsel was ineffective (a) by failing to challenge the State's Ferguson violation and (b) by advising the Petitioner to waive his motion for new trial and his direct appeal.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Brandon E. White, Columbia, Tennessee, for the Appellant, James Carroll.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Caleb Bayless, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

A.  Trial

The Petitioner was indicted for the aggravated assault of his girlfriend, Laura Johnson Clark, and for driving under the influence (DUI), second offense. At trial,[1] Columbia Police Officer Jennifer Dalton testified that on November 1, 2014, the victim called 911 and reported that someone had doused her with lighter fluid and threatened to set her on fire. Around 2:30 or 3:00 p.m., Officer Dalton responded to the victim's one-bedroom, efficiency apartment. The front door was standing open, and the victim, who was under the influence of alcohol, was standing inside the apartment, crying and shaking. Officer Dalton saw multiple patches on the right side of the victim's shirt that were either stained, discolored, or wet. Officer Dalton took photographs of the victim's shirt, which were shown to the jury. Officer Dalton did not smell any lighter fluid, but she explained that she was familiar with lighter fluid and knew the smell dissipated quickly. On a dresser inside the small apartment, Officer Dalton saw a bottle of lighter fluid and a "lighter holder" that attached to a belt. The victim asked Officer Dalton for permission to smoke a cigarette, but Officer Dalton told her not to smoke.

The victim testified the she and the Petitioner had been drinking "[q]uite a bit" the night before the incident and that they got up around 7:00 a.m. on the morning of the offense and started drinking. The Petitioner was drinking whiskey and the victim had two "40 ounce beer[s]," but the Petitioner "was kind of drinking [the victim's second beer] with his whiskey, so [she] didn't really get a lot of it."

Later in the day, they argued, but she could not recall what caused the argument. During the argument, the Petitioner grabbed a can of lighter fluid, sprayed her arm once, and threatened to set her on fire. The victim said that the spray was "just a squirt" and that her shirt was not soaked with lighter fluid. After the Petitioner threatened her, he put his hand on the Zippo lighter, which was in a holder attached to his belt, but he did not remove the lighter from its holder. The victim opined that the Petitioner did not intend to follow through with his threat, that he did not mean her any harm, and that he was only joking. Nevertheless, after he threatened her, she went outside the apartment and called the police to "come and settle us down." The Petitioner left the apartment when he discovered she had called the police. The victim acknowledged she asked Officer Dalton if she could smoke a cigarette but said that she was advised against it. The victim did not recall telling the 911 operator that she was afraid for her life but acknowledged that she may have said it.

The Petitioner testified that he had consumed alcohol the night before the incident but that only the victim drank alcohol on the morning of the incident. After he made lunch for the victim and himself, they sat beside each other on the bed. The victim accused him of drinking all of her beer, and the Petitioner laughed at the accusation,

---

[1]We have gleaned these facts from the trial transcripts which were submitted as exhibits at the post-conviction hearing.

which angered her. The Petitioner got up and walked to the dresser to fill his lighter with lighter fluid. While his back was to the victim, she stood up and bumped him as she walked past him. The Petitioner reassembled the lighter and put it in his pocket. The victim went outside, walked to a nearby apartment, and sat calmly in a chair. The Petitioner said that he left the apartment because the victim was drunk and because he did not want the situation to get worse. The Petitioner opined that the only way the victim could have gotten any lighter fluid on her was by bumping into him; however, he said he was not sure any lighter fluid got on her clothes. The Petitioner explained that Zippo lighter fluid came out of the can in a narrow stream and that a person would have to be restrained before they could be soaked with lighter fluid. The Petitioner acknowledged that the lighter fluid was clear, that it had hardly any smell, and that it quickly evaporated. He did not think lighter fluid would stain clothing. He noted that a warning on the back of the lighter fluid can stated that any clothing with lighter fluid on it should be thrown away. The Petitioner said that the victim did not remove her clothes. The Petitioner agreed that Officer Dalton may not have smelled lighter fluid on the victim's shirt because lighter fluid did not have much of an odor.

Shortly after the offense, Officer Josh Garner stopped the Petitioner's vehicle approximately one-quarter of a mile from the victim's apartment. The Petitioner exited the vehicle at Officer Garner's request. Officer Garner saw a half-empty bottle of whiskey inside the vehicle. The Petitioner's speech was slurred, and he smelled of alcohol. The Petitioner acknowledged that he had been drinking alcohol the previous night but maintained he had not consumed any alcohol that day. Officer Garner arrested the Petitioner for DUI.

Based upon the foregoing proof, the jury convicted the Petitioner of aggravated assault and DUI. The Petitioner waived his right to have a jury determine whether he had a prior DUI conviction. The trial court found the Petitioner guilty of DUI, second offense. Thereafter, the Petitioner filed a motion for new trial. However, the Petitioner executed a written waiver of his motion for new trial and did not pursue a direct appeal.

## B. Post-Conviction

The Petitioner timely filed a pro se petition for post-conviction relief, counsel was appointed, and an amended petition was filed. In pertinent part, the Petitioner alleged that that the State violated his due process rights by failing to collect and preserve the victim's shirt pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), and that his trial counsel was ineffective by failing to challenge the State's Ferguson violation and by advising the Petitioner to waive his motion for new trial and his direct appeal.

At the post-conviction hearing, the Petitioner testified that Officer Dalton's allegation that the victim's shirt was "soaked" with lighter fluid was impossible because

lighter fluid "comes out [of the can] the size of half of a pencil lead. In order to soak somebody, especially to the extent that it was contended, you would have to hold somebody down and pour it on them, to get them actually wet that way." He also recalled that Officer Dalton said she did not smell lighter fluid on the victim. The Petitioner contended that Officer Dalton should have been able to smell lighter fluid if it had been on the shirt.

The Petitioner stated that trial counsel told him that a direct appeal "would do no good" because they would not be permitted to introduce new evidence during the appeal. The Petitioner thought trial counsel would not be helpful on appeal and said that trial counsel provided incorrect advice regarding whether the Petitioner should waive his right to a direct appeal.

The Petitioner said that to his knowledge, trial counsel never investigated the apartment where the aggravated assault allegedly occurred. The Petitioner and trial counsel had a telephone conversation regarding whether lighter fluid would stain the victim's shirt. Trial counsel advised the Petitioner that he did not have the victim's shirt for testing and that another shirt might not stain or bleach the same as the victim's shirt. Trial counsel did not investigate whether lighter fluid might have an effect on a person's skin. The Petitioner acknowledged that at trial, the State brought up "to a degree" that lighter fluid could irritate skin. The Petitioner said that he was a smoker, that he had used Zippo lighters since he was twenty years old, and that he knew lighter fluid could burn his skin if he failed to wash it off.

On cross-examination, the Petitioner said that he thought trial counsel should have introduced proof that the victim walked less than ten feet away from the Petitioner, sat down, and called the police, which he thought belied her claim that she was afraid of him.

The Petitioner said that he requested new counsel on two occasions because he thought trial counsel would not help him. The State made a plea offer with a one-year sentence. The Petitioner agreed that, "in hindsight," he should have accepted the plea offer, but he stated that he had not wanted to plead guilty to an offense he did not commit. The Petitioner said that trial counsel spent ten minutes providing him with the reasons a direct appeal would not be successful. The Petitioner acknowledged that he did not have any evidence that a direct appeal would have been successful.

The Petitioner said that his relationship with the victim continued after he was charged with assaulting her and that they arrived at the post-conviction hearing together. He maintained, however, that he did not have contact with her until after the trial. He did not know if she still had the shirt at the time he resumed contact with her and never thought about asking her for the shirt.

- 4 -

On redirect examination, the Petitioner said that after he was arrested for DUI, he was in jail for at least six months before he was released on bond. While he was in jail, he did not have access to the victim's shirt. The Petitioner said that "in hindsight," he thought he should have pursued a direct appeal. At the time, however, he thought it would be a "wast[e of] time" because the trial court had denied his requests for a new attorney, and he thought trial counsel would not put forth an adequate effort on appeal.

On recross-examination, the Petitioner said that he recalled speaking with trial counsel on two occasions at the jail. He asserted that trial counsel "didn't go out of his way to help me whatsoever." The Petitioner maintained that trial counsel was not prepared for trial and should have brought "other facts" to the jury's attention. Trial counsel advised the Petitioner to accept the State's plea offer which included a sentence of eleven months and twenty-nine days. The Petitioner said that he would have accepted the plea offer despite his innocence if he had known trial counsel would not have been more helpful.

Trial counsel said that he was licensed to practice law in 2012, that he had been involved in five or six trials, and that all of the trials were criminal cases. A different attorney represented the Petitioner at the preliminary hearing, and trial counsel was appointed to represent the Petitioner at trial.

Trial counsel reviewed the discovery provided by the State. Additionally, trial counsel researched whether spraying lighter fluid on another person could constitute an aggravated assault; however, he was unable to find any cases directly on point.

Trial counsel said that he met with the Petitioner on multiple occasions. They discussed trial procedure, jury selection, and whether the Petitioner should testify. Trial counsel acknowledged that he never went to the apartment to investigate. Trial counsel also acknowledged that he did not interview Officer Dalton or the victim but said that he reviewed their preliminary hearing testimony. He said that in late spring 2015, he used a white t-shirt he owned to test how lighter fluid would spread on the shirt. He used a can of lighter fluid similar to the one found in the apartment. Trial counsel acknowledged that testing on the victim's blue shirt may have had different results.

Trial counsel said that his main objective at trial was to establish the Petitioner did not intend to harm the victim. The Petitioner consistently maintained that he had a lighter in one hand and a can of lighter fluid in the other hand when the victim bumped into him, causing lighter fluid to splash onto her shirt. Trial counsel said that he knew prior to trial that the victim had tried to smoke a cigarette in front of Officer Dalton. He may have known that the victim did not ask to change clothes and that Officer Dalton did not smell lighter fluid on the victim. Trial counsel said that when he performed his tests on the white t-shirt, he thought the lighter fluid had a distinctive smell. He acknowledged that

his tests were "inconclusive." Trial counsel did not investigate the possible effects of lighter fluid on human skin.

Trial counsel said he advised the Petitioner that the trial court might not allow them to test a shirt and lighter fluid during trial. Nevertheless, he acknowledged that he never requested the trial court's permission to conduct such testing.

Trial counsel agreed that the two photographs of the victim and her blue shirt were not "HD quality" and were "a bit grainy." He further agreed that he could not determine by looking at the photographs whether lighter fluid was on the shirt. Trial counsel never asked the State where the shirt was located. Trial counsel acknowledged that he did not file a motion to have the State preserve the shirt and that by the time of trial, the shirt was not available.

Trial counsel said that he never told the Petitioner that he should not pursue a direct appeal. However, he advised the Petitioner that appeals which raised only sufficiency concerns rarely were successful. Regarding his decision not to file a Ferguson motion to exclude evidence regarding the shirt, trial counsel explained that based on his experience as an attorney and as a former law enforcement officer, "the general practice is that materials that possess a chemical hazard or a flammable hazard would not be preserved." Trial counsel said he was aware "the courts had already ruled they're not under an obligation to preserve that."

On cross-examination, trial counsel said that after he filed a motion for new trial, he met with the Petitioner at the Place of Hope where the Petitioner was undergoing rehabilitation. The Petitioner "indicated to [trial counsel] that he did not want to pursue it, he was just going to take responsibility for this and get on with his life." Subsequently, the Petitioner signed a written waiver of his motion for new trial. The waiver, which was submitted as an exhibit at the post-conviction hearing, contains provisions which state that the Petitioner "acknowledges that [the] withdrawal of his Motion for a New Trial procedurally extinguishes his right to appeal" and that the Petitioner "does not wish to proceed with an appeal." Trial counsel denied forcing the Petitioner to waive his motion for new trial and his direct appeal. He stated that he merely advised the Petitioner that in his experience, direct appeals involving only challenges to the sufficiency of the evidence rarely were successful and said that the Petitioner made the decision to forego the appeal. Trial counsel said that his opinion regarding the appeal had not changed and that he still thought the Petitioner had little chance of success on appeal.

Trial counsel said that he advised the Petitioner to accept the State's offer to plead guilty to domestic assault and receive a suspended sentence of eleven months and twenty-nine days. The Petitioner, however, rejected that advice and chose to go to trial. Trial

counsel noted that the victim had testified at trial that "there was never any lighter out" during the offense, which was contrary to what the Petitioner had told trial counsel. Trial counsel said that it would have benefitted the State's case if he had chosen to impeach the victim. After the State rested its case-in-chief, trial counsel and the Petitioner discussed the possible benefits and risks of the Petitioner's testifying. Trial counsel advised the Petitioner that he did not think an acquittal was likely but that the jury might convict the Petitioner of a lesser-included offense. In his motion for judgment of acquittal, trial counsel argued that lighter fluid alone was not a deadly weapon.

At the conclusion of the hearing, the post-conviction court filed a written order, denying relief. On appeal, the Petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

First, we will address the Petitioner's claim that the State violated his due process rights by failing to collect and preserve the victim's shirt. The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. See Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001). As such, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to the defendant's guilt or innocence or to the potential punishment faced by a defendant. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

In State v. Ferguson, 2 S.W.3d 912, 915-18 (Tenn. 1999), our supreme court addressed the issue of when a defendant is entitled to relief in the event the State has lost or destroyed evidence that was alleged to have been exculpatory. The court explained that a reviewing court must first determine whether the State had a duty to preserve the lost or destroyed evidence. Id. at 917. Ordinarily, "the State has a duty to preserve all

evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Id. However,

> "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

Id. (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)).

If the proof demonstrates the existence of a duty to preserve the evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

> 1. The degree of negligence involved;
> 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
> 3. The sufficiency of the other evidence used at trial to support the conviction.

Id. (footnote omitted). If the court's consideration of these factors reveals that a trial without the missing evidence would lack fundamental fairness, the court may consider several options such as dismissing the charges or providing an appropriate jury instruction. Id. This court reviews the trial court's decision concerning the fundamental fairness of a trial conducted without the missing evidence under a de novo standard of review. State v. Merriman, 410 S.W.3d 779, 791 (Tenn. 2013).

We note that the Petitioner could have raised a Ferguson challenge during trial or on direct appeal. As this court has explained:

> It is well established that a party may not raise an issue in a post-conviction petition that could have been raised on direct appeal. State v. Townes, 56 S.W.3d 30, 35 (Tenn. Crim. App. 2000). "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented."

- 8 -

> Tenn. Code Ann. § 40-30-206(g) (1997). "The opportunity to raise the issue during a direct appeal of the conviction, coupled with a failure to pursue that appeal or a failure to raise the issue during that appeal, constitutes a waiver of the issue pursuant to Code section 40-30-206(g) for purposes of a post-conviction relief proceeding." Townes, 56 S.W.3d at 35.

Andrew Cole v. State, No. W2002-01432-CCA-R3-PC, 2003 WL 22071451, at *4 (Tenn. Crim. App. at Jackson, Aug. 29, 2003). Therefore, the Petitioner has waived any freestanding issues concerning a potential Ferguson violation.

Next, we will turn to the Petitioner's claims of ineffective assistance of counsel. A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

The Petitioner contends that his trial counsel was ineffective by failing to file a motion to dismiss the charge of aggravated assault based upon the State's Ferguson violation or by failing to file a motion to instruct the jury on the Ferguson violation. Trial

counsel testified that he decided not to file a <u>Ferguson</u> motion based upon his experience as a law enforcement officer and as a lawyer that materials which pose a potential hazard generally are not preserved. The post-conviction court disagreed with this reasoning, finding that the victim's shirt was not too hazardous for the State to collect and store. Regardless, the post-conviction court found that the State did not have a duty to collect or store the shirt, noting that the issue underlying the Petitioner's aggravated assault charge was not primarily whether lighter fluid was on the victim's shirt. The issue was whether the Petitioner intentionally sprayed the lighter fluid on the victim's shirt and threatened to burn her or whether the lighter fluid on her shirt resulted from her accidentally bumping into the Petitioner. Therefore, the materiality of the shirt was not readily apparent. This court has stated that "the mere possibility of exculpatory content does not trigger a finding that the State failed in its general duty to preserve evidence under <u>Ferguson</u>." <u>State v. Ronnie D. Sims</u>, No. M2004-02491-CCA-R3-CD, 2005 WL 3132441, at *8 (Tenn. Crim. App. at Nashville, Nov. 22, 2005) (citing <u>State v. Coulter</u>, 67 S.W.3d 3, 54-55 (Tenn. Crim. App. 2001)). The post-conviction court determined, accordingly, that "[p]reserving the shirt was not required or even appropriate" and that <u>Ferguson</u> was not applicable. We agree.

The post-conviction court also found that Officer Dalton's testimony and the photographs of the shirt adequately described the amount of lighter fluid sprayed on the shirt and the areas on the shirt on which the fluid was sprayed; in other words, they constituted reliable substitute evidence, which satisfied <u>Ferguson</u>. As such, the post-conviction court found that trial counsel was not ineffective by failing to file a motion for dismissal of the charges or or a jury instruction based upon <u>Ferguson</u>.

The Petitioner next asserts that his trial counsel was ineffective by advising him to waive his direct appeal. The Petitioner contends trial counsel should have appealed the sufficiency of the evidence sustaining the Petitioner's aggravated assault conviction, asserting that "merely spraying someone with lighter fluid does not constitute the offense of aggravated assault" and that the State did not prove that the Petitioner "used or displayed his lighter in a manner" suggesting he intended to ignite the lighter fluid.

"In Tennessee, a criminal defendant has the right to one level of appellate review." <u>Serrano v. State</u>, 133 S.W.3d 599, 604 (Tenn. 2004) (citing Tenn. R. App. P. 3(b) (2003); <u>Collins v. State</u>, 670 S.W.2d 219, 221 (Tenn. 1984)). "Because a defendant has a statutory right to appeal, an attorney has an obligation to consult with the defendant about an appeal following a conviction." <u>Arroyo v. State</u>, 434 S.W.3d 555, 559 (Tenn. 2014). After the consultation, the attorney should comply with the defendant's wishes; in other words, if the defendant wants to file an appeal, the attorney should comply. <u>Id.</u> at 559-60. However, the law does not require a defendant to appeal a criminal conviction; accordingly, a defendant may waive his right to appeal if he so desires. <u>Serrano</u>, 133 S.W.3d at 604. As a protection of a defendant's rights, Tennessee Rule of Criminal

Procedure 37(d) requires that when a defendant chooses to waive the right to a direct appeal, counsel for the defendant shall file a written waiver of appeal, signed by the defendant, which clearly reflects that the defendant was aware he had the right to appeal and was voluntarily waiving it.[2]  Id.; see also Carter v. State, 102 S.W.3d 113, 119 (Tenn. Crim. App. 2002).

The post-conviction court found that the proof adduced at trial was sufficient to sustain the Petitioner's aggravated assault conviction to the satisfaction of the jury and the trial court as thirteenth juror; therefore, the Petitioner suffered no prejudice by abandoning an appeal of the sufficiency of the evidence.  In support of this finding, the post-conviction court noted that Officer Dalton testified regarding the victim's "hysterical mental state" and that the photographs established three, separate stains of lighter fluid on the victim's shirt, which the court found "strongly suggest[ed]" the lighter fluid was placed on the shirt intentionally, not accidentally.  The court also found that the victim's testimony at trial clearly was designed to be favorable to the defense and that the Petitioner had placed undue weight on her altered version of events in choosing to go to trial and reject the State's favorable plea offer.  Moreover, the post-conviction court noted that the victim was present at the post-conviction hearing but did not testify.  The post-conviction court opined that the Petitioner's main complaint was his dissatisfaction with his choice to reject the State's plea offer, not his dissatisfaction with trial counsel.

Moreover, trial counsel testified that he never advised the Petitioner not to pursue a direct appeal; he merely cautioned the Petitioner that appeals which challenged only the sufficiency of the convicting evidence had little chance of success.  The Petitioner did not testify that trial counsel told him not to pursue a direct appeal and instead essentially testified that trial counsel told him an appeal would not be successful.  Trial counsel testified that the Petitioner had entered a rehabilitation program and chose to waive his direct appeal in order to "get on with his life."  Although trial counsel had filed a motion for new trial, the Petitioner signed a waiver of his motion for new trial and direct appeal, which was filed on November 6, 2015.  The Petitioner acknowledged that he waived his direct appeal because he thought it would be a "wast[e of] time."  We conclude that the Petitioner is not entitled to post-conviction relief.

### III.  Conclusion

Upon review, we conclude that the post-conviction court's judgment should be affirmed.

_____
NORMA MCGEE OGLE, JUDGE

---

[2] The written waiver in the record was signed by the Petitioner, trial counsel, the prosecutor, and the trial court.